CASE 12.—PROSECUTION AGAINST WATHEN, MUELLER & COMPANY FOR UNLAWFULLY SELLING WHISKY IN QUANTITIES LESS THAN FIVE GALLONS.— March 25, 1909.

# Wathen, Mueller & Co. v. Commonwealth

Appeal from Marion Circuit Court.

I. H. THURMAN, Circuit Judge.

Defendants convicted, and appeal—Reversed.

1. Judges—Disqualification—Bias and Prejudice.—It is reversible error for the trial judge in a criminal prosecution to refuse to vacate the bench, where accused by proper affidavits shows that he has good reasons, supported by facts, to believe that the judge will not afford him a fair and impartial trial.

Wathen, Mueller & Co. v. Commonwealth.

2.—Judges — Disqualification—Prejudice—Affidavits.— In a prose-
cution under the liquor laws, affidavits seeking to have the
regular judge vacate the bench showed both by statements
of the judge and his previous conduct that he was a strong
opponent of the whisky traffic, that he had promised to use
the machinery of his court to keep a certain town dry if local
option prevailed there, and if any doubt arose he would
solve it in favor of the Commonwealth, and that it would
not be his fault if parties charged with violating such law
went unwhipped of justice. The affidavits further charged
that the judge was personally hostile to accused and gave
facts showing such hostility. Held, that the affidavits were
sufficient to require the judge to vacate the bench, and the
fact that he controverted the matter stated therein was
ineffectual, as the statements of the affidavits must be taken
as true in passing upon the right of accused to have the
regular judge vacate the bench.

3. Intoxicating Liquors—Offenses—Unauthorized Sales.—Where a
sale of a barrel of whisky was made to a person who had
formed a club to buy the barrel, with no intention by the
seller or his agents of having any part in the distribution of
the whisky among the subscribers for it, and the division
was made on the seller's premises without his knowledge or
consent, the seller was not guilty of selling whisky by retail,
though one of his employes outside of the scope of his em-
ployment, and as an accommodation to the purchaser and
subscribers, took the bung out of the barrel and furnished
the purchaser with a rubber hose and a gallon measure to
enable him to make the division.

4. Intoxicating Liquors—Offenses—Unauthorized Sales.—Where
a sale of a barrel of whisky, made to a person who had formed
a club to buy, is simply a scheme to enable the seller to
deliver to purchasers whisky in less quantities than the
law allowed him to sell, he is guilty of unlawfully selling
liquors in such forbidden quantities.

SAMUEL ARNETT and LAFE PENCE for appellants.

### SUMMARY AND AUTHORITIES.

1. The regular judge erred in refusing to vacate the bench.
The facts set out in the affidavit filed, show ample grounds
for the removal of the judge. (Powers v. Commonwealth, 24
Ky. L. R., 1012; Givens v. Crenshaw, 21 K. L. R., 1618; Morris
v. Commonwealth, 93 K. R., 588; German Insurance Co. v. Lan-
drum, 88 K. R., 440; Ky. Journal Pub. Co. v. Gaines, 110 K. R.,
S. W. R., 268.)

2. All orders and judgments entered by the regular judge were
void. He had no jurisdiction over the cases after the filing of the
affidavits. The filing of the affidavit becomes a jurisdiction ques-
tion, and ipso facto deprives the regular judge of jurisdiction to
make any orders in the case. (Ewill, etc., v. Jackson, etc., 110
K. R., S. W. R., 860; German Insurance Co. v. Landrum, 88 K.
R., 440.)

3. The indictment must set out all of the particular circumstances of the offense charged, if they be necessary to constitute a complete offense (section 24 Criminal Code), and the instruction to the jury should limit the finding of the jury to the facts so alleged as constituting the offense.

4. If the appellee expected to rely upon a trick, device or subterfuge the indictment should have set out the particular facts expected to be proven constituting the trick or device to put appellant on the guard. The indictment charges only a sale of whisky of a less quantity than five gallons to J. B. Thomas in one indictment or to Mike Lee in the other indictment and these are the only facts that could be proven. (Twelve Mile Turnpike Co. v. Commonwealth, 4 K. L. R. 369, section 124 Criminal Code; Commonwealth v. Milby, 15 K. L. R., 568.)

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

Appellants are registered distillers engaged in the manufacture of whisky in Marion county; their distillery being located outside of the limits of the city of Lebanon and not in local option territory. They were indicted at the June term, 1908, of the Marion Circuit Court in several cases, charged with the offense of retailing whisky in less quantities than five gallons without license to do so. Before any of the cases were called for trial, or any steps taken, appellants filed in the clerk's office an affidavit and an amended affidavit, seeking to have the regular judge vacate the bench. The judge held the affidavits insufficient, and refused to vacate the bench, and proceeded to call the cases for trial, whereupon appellants waived a jury and submitted the law and facts in two test cases to the court. The waiver was made upon the express agreement between the parties with the consent and concurrence of the court that the waiver of the jury was in no wise to prejudice the rights of appellants, nor was such waiver to be considered as a waiver of the objections of appellants to the presiding judge sitting on the trial of the case or taking or exercising any jurisdiction in the case.

The main question to be determined on this appeal is whether the court erred in refusing to vacate the bench upon the filing of the affidavits of appellants, by which they sought to have him vacate the bench.

The original and amended affidavits filed by appellants for the purpose of having the judge of the lower court vacate the bench are very long, and for that reason we refrain from copying them. It would be tedious and without profit to any one to give a full synopsis of all the facts and points made in the affidavits. We will therefore only state the substance of a few of the salient reasons stated why the judge should have refused to try the cases. It is stated that in the month of March, 1907, there was an election held to determine whether or not local option should prevail in the city of Lebanon, and that the judge of the court, although a resident of another county, made divers public speeches during the canvass in Lebanon in the public hall, and used and uttered violent and bitter language against persons engaged in the business of selling whisky, in which speeches he used the following language: "If local option was voted by a majority of the people of Lebanon, that with his juries and the machinery of his court he would see that the town was kept dry." Local option was carried in that city, and at the first court that convened thereafter the judge appointed three jury commissioners who were ardent local option men, and, although the citizens and voters of that county were about equally divided on the question, all the names, consisting of a hundred or more, drawn from the jury wheel after the election for the purpose of impanelling petit and grand juries were ardent advocates of local option. It was charged in the affidavits that the judge entertained such prejudice and bias on the subject of whisky traffic as to disqualify him from presiding over the trial of any one charged with a violation of the laws regulating such traffic, and that he said during the trial of a case in an adjoining county, just previous to the time of the filing of the affidavits: "That in any case coming before him as judge involving a charge of an infraction of the local option laws, if any doubt arose he would solve it in favor

of the Commonwealth. * * * I will solve all doubts in such cases in favor of the Commonwealth, and if parties go unwhipped of justice on the charge of violating the local option law in my district, it will be by the verdicts of the juries, and if I were on the jury I would find a way to convict them.'' It was also charged in the affidavits that the presiding judge was personally hostile to appellants, and that on account of such personal hostility, as well as on account of an uncontrollable and unreasonable bias against the whisky business, he originated and instigated a movement on the eve of the holding of the local option election in Lebanon, Ky., to-wit, the 9th day of March, 1907, to cause false charges to be made against appellant R. N. Wathen and other opponents of local option, and to cause their arrest on the false charge of conspiracy to bribe voters; and it was, in substance, stated that the arrest and humiliating treatment of appellant Wathen and others was a part of a scheme concocted and advised by the regular judge, that it was not done in good faith, but for the purpose of intimidating and deterring the opponents of local option and as a means of carrying the election in favor of local option, that this unlawful arrest had been determined upon by the judge and others in connection with him, two or three weeks before the election, and was so stated by the judge to prominent citizens of that county.

It is due to the presiding judge to say that, in rendering his opinion on the motion, he controverted the material parts of the affidavits; but it is also true that we cannot consider this in passing upon the question. The law prohibits this. We must take the matters stated in the affidavit as true. This being so, we are of the opinion it was error for the court to refuse to vacate the bench. The accused has a right to be tried by a judge that is fair and impartial, and when he has good reasons to believe, supported by facts, that he will not afford him such trial, he

should not be compelled to take chances of a trial before that judge in order that the truth of the matter might be developed, which may never be developed, because there are many ways that a partial judge may knife a party that he is trying without it appearing from the record, or without his being able to ascertain the fact. So when the fact is made to appear, by proper affidavits, the judge should then vacate, and it is reversible error if he does not. See Massie v. Commonwealth, 93 Ky. 588, 20 S. W. 704, 14 R. 564. In the case of Givens v. Crenshaw, 55 S. W. 905, 21 Ky. Law Rep. 1621, this court said: "We do not think it is necessary in all cases, or at all in fact, that the affiant should state facts which tend to show that the judge was intentionally unfair, or that he would knowingly disregard the law or the evidence to the prejudice of the affiant. It may, however, sometimes happen that conditions or circumstances are such that the perfectly honest and competent judge would in fact be unable to afford a litigant such an absolute impartial trial as the law intends and requires. In the case under consideration the facts stated in the affidavit do not import intentional unfairness or wrong; but, if true, they might create an impression upon the affiant that the judge, however honest and pure his intentions may be, had become so prejudiced that, imperceptibly to himself, he would be unable to give a fair and impartial trial." See, also, German Insurance Company v. Landram, 88 Ky. 440, 10 R. 1039, 11 S. W. 367, 592; Powers v. Commonwealth, 114 Ky. 237, 70 S. W. 644, 1050, 71 S. W. 494, 24 R. 1007, and Kentucky Journal Pub. Co. v. Gaines, 33 Ky. Law Rep. 402, 110 S. W. 268. In the last-named case the court said: "We are of the opinion that the statements of this affidavit thoroughly disqualified the regular judge from presiding in the trial of the case. We do not mean to say that in our opinion these statements are true, for their truth cannot be inquired into in this action. All that the

statute, as construed by this court in German Insur-
ance Company v. Landram, supra, requires, is that
the affidavit should allege such facts, which, if true,
show.that the trial judge will not, or may not, afford
the litigant a fair and impartial trial of his case.''
We do not mean to hold that Judge Thurman may
not properly preside in other prosecutions for the
violation of the laws against the sale of whisky. We
only hold that the facts here shown by the affidavit
show such personal hostility as to make it improper
for him to preside on the trial of these defendants.

The indictment in this case charged appellants, R.
N. Wathen, Hans Mueller, and Charles Kobert, Sr.,
of the offense of selling spirituous liquors by retail
without license to do so, by a sale of less than five
gallons of whisky to one J. B. Thomas. The offense
was alleged to have been committed in the month
of January, 1908. It was shown by the proof, in
substance, that appellants were distillers with their
distillery located in Marion county outside of the
city limits of Lebanon, and that a short time prior
to the date on which the alleged offense was com-
mitted, one Mike Lee approached appellant R. N.
Wathen and asked him if he could sell him some
whisky. Wathen answered that he could not sell
him less than a barrel. Lee then said that some of
his neighbors were pretty dry, and that he would
see them and see if he could get up a club to take a
barrel. Wathen said to him that he had better con-
sult a lawyer and see whether or not he could legally
do that. He did so, and the lawyer told him that it
would not be a violation of the law. Lee's neighbors
and friends gave him the money for the amount de-
sired by each, and when he had obtained enough to
pay for the contents of the barrel he deposited it
in a bank in Lebanon, and then went to the office of
appellants, situated near the distillery, and there
found the clerk of the company. He gave the clerk
a check for the barrel of liquor, deducting $1, the

price of the barrel which contained the whisky. The clerk then paid the tax to the government and had the barrel removed to what is known as the "free house." That afternoon or the next, Lee and the members of his club, including the witness J. B. Thomas, who received a gallon, appeared at the place and found one Bullock on the premises, who had the key to the free house, and he unlocked the door and delivered the barrel of whisky to Lee, and, as an accommodation, Bullock took the bung out of the barrel and furnished a rubber hose and a gallon measure, and from a list of names held by Lee the whisky was divided among the subscribers who had previously paid therefor. It was shown that appellants and their secretary did not know of this division of the whisky in the room referred to, and that the act of Bullock was not in the line of his employment, but that he acted only as an accommodation to Lee and those with him.

It is conceded by appellee's counsel that if Lee had removed the barrel when he paid for it from the premises of appellants, and then divided it, appellants would not be responsible; but they contend that the manner in which the transaction took place shows a sale to each and all the persons who had subscribed for the whisky, that it was not a sale in good faith by wholesale, but that it was a sale by retail, and the means adopted was a devise to make it appear that it was a wholesale transaction. Section 1304, Ky. St., provides: "Any person who shall, without license so to do, sell or otherwise dispose of any spirituous, vinous or malt liquors shall, for each offense, be fined not less than twenty nor more than one hundred dollars." If the sale of this barrel of whisky to Lee was made in good faith by wholesale, and not with the intention by appellants or their agents of having any part in the distribution of the whisky among the subscribers for it, and the division was made without the knowledge or consent of ap-

pellants on their premises, and the act of Bullock was unauthorized by them, and not within the scope of his employment, and only as an accommodation to Lee and the subscribers, then it appears that appellant would not be guilty of selling whisky by retail; but, if the method or scheme was used to enable appellants to sell and deliver to purchasers whisky in less quantities than five gallons, then they are guilty of the violation of the statute referred to. And there are some facts and evidence tending to show this was true: First, Mike Lee did not purchase the barrel which contained the whisky. Appellant retained that and deducted the price of it, $1, from the amount of the check. Second, several transactions had taken place there of the same character, and the presumption is that Bullock in helping to divide the whisky was acting within the scope of his employment.

For these reasons the judgment of the lower court is reversed and remanded for further proceedings consistent herewith.

### ON REHEARING.

While the circuit judge controverted the statements of the affidavit, he correctly ruled that for the purposes of the motion they should be taken as true; and, as shown by his opinion, he did take the statements of the affidavit as true in disposing of the motion. The statement of the opinion that he controverted the affidavit was only made to avoid putting the circuit judge in an unjust position on the facts.

The other matters set out in the motion were all presented on the original oral argument, and any additional authorities which counsel may desire considered may be shown in the petition for rehearing.

Motion overruled.