## Chreste v. Commonwealth.

(Decided December 11, 1917.)

### Appeal from Jefferson Circuit Court (Common Pleas Division No. 1).

1. Judges—Objections to Judge and Proceedings Thereon—Affidavits. —An affidavit filed under the provisions of section 968 of the Kentucky Statutes to require the judge to vacate the bench must state facts from which it must appear that the judge, on account of bias or prejudice, is disqualified to preside at the trial of the case, and such facts are not sufficient if they only show that the judge has erroneously made some adverse ruling against the affiant, or that he entertains a conviction upon a principle of law involved in the case; a fortiori are they insufficient if they show a disposition on the part of the judge to prosecute, and, if found guilty to punish others charged with similar conduct to that for which affiant is being tried.

2. Attorney and Client—Disbarment.—Conduct which would be sufficient to prevent one from being admitted to the profession of an attorney at law will be sufficient to disbar one after he shall have been admitted, and this conduct need not be such as would render the attorney liable to a criminal prosecution. If it is such as to show him to be an unfit or unsafe person to enjoy the privileges and to manage the business of others in the capacity of an attorney and to render him unfit to discharge the duties of his office or unworthy of confidence, the court would be authorized to strike his name from the roll of attorneys and to revoke his license to practice law.

3. Attorney and Client—Disbarment.—Where an attorney stands convicted of employing different agents at different times to solicit clients for him and to represent to the prospective clients that the one whom the agent represents and for whom he is soliciting business is a person other than his principal, the offending attorney, and this course is pursued for a long time, resulting in the procuring of many cases, and in addition he is convicted of withholding evidence within his knowledge favorable to a litigant until he was given employment in the case, the court did not abuse

a sound discretion in adjudging that he should be disbarred from the practice of his profession.

4. Continuance—Affidavit for.—Where a litigant agrees that an affidavit filed for a continuance might be read as the testimony of the absent witness, he can not complain of the introduction of the affidavit on the ground that it was insufficient in law to authorize a continuance.

THUM & ROY for appellant.

A. SCOTT BULLITT, HUGH B. FLEECE and ELMER C. UNDERWOOD for Commonwealth.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This is the second appeal of this case, the opinion in the first one appearing in 171 Ky. 77. There will be found in that opinion a detailed and elaborate history of the case which we will not repeat here, except such as may be necessary to an understanding of the proceedings in the trial court after the return of the case and of the questions presented and discussed on this appeal.

Briefly, it appears that the appellant, Chreste, was a practicing attorney in the city of Louisville, and a man of about 32 years of age. He was graduated from the University of Michigan, at Ann Harbor, and had been practicing law some seven or eight years.

The judge of the Jefferson circuit court, common pleas division No. 1, issued four rules against Chreste for him to show cause, if any he had, why his name should not be stricken from the roll of attorneys because of certain conduct with which he was charged in each of the rules; the first one charging him in substance with having in his possession testimony material to a litigant in a case with which he was not connected, and which he proposed to divulge to the litigant's attorney only upon condition that he, Chreste, was given a fee in the case; and that he afterwards divulged the testimony, but not until he was promised a fee, which he afterward obtained.

The second rule charged him with having employed one Sherrick to secure clients and agreed to and did pay Sherrick for such services $25.00 per month, his car fare, and twenty-five per cent. of all attorney's fees collected from clients secured by Sherrick, and that this employment lasted for a period of three months.

The third one charged him with having employed one Saunders to perform the same duties as Sherrick,

except that Saunders was to receive $8.00 per week with an unlimited expense account, and that he instructed Saunders, while soliciting employment of Chreste, to say to persons of the Catholic religion that he (Saunders) represented O'Doherty & Yonts, and to say to others that he represented Edwards, Ogden & Peak, those two firms being lawyers of extensive practice and known ability in the city of Louisville.

The fourth rule charged Chreste with having endeavored to obstruct the processes of the court by intimidating and thereby preventing Saunders from appearing and responding to a rule which had been issued against him for having procured certain witnesses to give false testimony in a certain damage suit pending in the court. These rules were issued on December 1, 1914, and were made returnable on December 4, following.

The first opinion, *supra,* gives in detail the succeeding proceedings showing the final disposition of the case and fully sets forth the reason why the judgment of disbarment rendered therein under the peculiar facts presented was reversed.

After the judgment first appealed from was rendered there was offered in the lower court, in connection with a motion to set that judgment aside, an amended response to the rules which set forth the appellant's defense in more finished form and with greater detail.

Upon the return of the case after the filing of the mandate from this court, appellant filed his affidavit as authorized by section 968 of the Kentucky Statutes and entered motion that the presiding judge of the court vacate the bench, which motion was overruled and appellant then filed motion for a change of venue, which was also overruled. A trial of the issues made by the response in each of the rules was had before a jury, and it returned a verdict finding appellant guilty of the charges preferred by rules numbers one, two and three, but found him not guilty of the charges preferred in rule number four. Upon this verdict the court entered judgment disbaring appellant as an attorney at law, and to reverse it he prosecutes this appeal.

But four errors are relied on for a reversal, they being: (1) that the court should have sustained appellant's motion for the judge to vacate the bench; (2) that the judgment disbaring appellant was too severe and not authorized by the facts found by the verdict of the jury; (3) that the court erred in sustaining the motion for a

continuance made by the Commonwealth founded upon an affidavit of the county attorney showing the absence of a material witness for the Commonwealth and his testimony, which affidavit, appellant, in order to prevent a continuance, agreed might be read as the testimony of the absent witness; and, (4) error of the court in instructing the jury.

Section 968, *supra,* of the Kentucky Statutes, gives the litigant the right to substitute a special judge to try his case in lieu of the regular one when the litigant "shall file with the clerk of the court his affidavit that the judge will not afford him a fair and impartial trial, or will not impartially decide an application for a change of venue." But this court has in a long line of decisions construed the statute so as to require the litigant seeking to take advantage of it to go further in his affidavit than the general language of the statute and to set forth facts showing the foundation of his belief that the judge will not afford him a fair and impartial trial, which facts must not be the mere conclusions of the affiant, but must be such as to necessarily show prejudice against affiant by the judge, and sufficient to prevent him from fairly and impartially trying the case. German Insurance Company v. Landrum, 88 Ky. 433; Sparks v. Colston, 109 Ky. 711; Schmidt v. Mitchell, 101 Ky. 570; Erwin v. Benton, 27 Ky. Law Reporter 909; Boreing v. Wilson, 128 Ky. 570; Hargis v. Marcum, 31 Ky. Law Rep. 795; Ky. Journal Co. v. Gaines, 139 Ky. 747; Givens v. Crawshaw, 21 Ky. Law Rep. 1618; White v. Jouett, 147 Ky. 197; Hargis v. Commonwealth, 135 Ky. 578, and many other cases which might be cited.

A few short excerpts from some of the opinions will be sufficient to illustrate the application of the statute as interpreted by this court.

In the opinion in the Landrum case, *supra,* we find it stated that: "The fact or facts upon which the belief that the judge will not give the litigant a fair trial should and must be stated in the affidavit, and they must be of such a character as shall prevent the judge from properly presiding in the case. We do not mean to say the statement for the ground of belief must establish, if true, that the judge is a corrupt official, but we do mean to adjudge that such causes, and those of a like character, as have been noticed, are not sufficient, and there must be some fact stated, such as personal hostility of such a character, if that ground is relied on, as would

prevent an official of personal integrity from presiding in the case.''

The causes "of a like character, as have been noticed" mentioned in the quotation just made refer to illustrative causes made by the court in that case, which were that the judge may have on previous occasions made adverse rulings against the affiant, and he may have entertained certain views upon legal questions presented in the case, all of which we learn from a former part of the opinion when the court said: "He (the judge) may have sustained a demurrer to a pleading in the case, or in some other similar case, that if adhered to must prove fatal to the case of affiant. . . . . He may refuse to continue a case when the litigant or his counsel believes the grounds were sufficient. In all such cases the litigant, for such reasons, may conceive that injustice will be done him, and, therefore, he is ready to make the affidavit, when it is apparent that *not one* of the grounds mentioned, or those of a *like* character, are sufficient to require the judge to vacate the bench.''

In the case of Sparks v. Colston, *supra*, this court upon this point said: "But it is not enough to merely assert the fact of personal hostility or partiality. He (affiant) must state the facts which he alleges constitute the state of feeling complained of. We have held that the truthfulness of the facts stated cannot be questioned by the judge (Vance v. Field, 89 Ky. 178); therefore, it is all the more important that the facts and not the litigant's conclusions or suspicions be set forth, that this court may have the opportunity of testing their sufficiency if the trial judge should hold them insufficient.''

In the case of Hargis v. Commonwealth, *supra*, the affidavit disclosed that the presiding judge the motion sought to remove had formerly been Commonwealth's attorney of the district, and belonged to a different political faction from the one to which the affiant belonged, and that affiant and his father had always worked against the election of the judge while he was running for the office of Commonwealth's attorney and that upon occasions, after having been elected and while filling that office, he prosecuted affiant's father for different offenses with which he was charged, as well as other members of the political faction to which the father belonged, and that while the judge was Commonwealth's

attorney the killing for which affiant was being prose-cuted occurred, and that the judge had expressed himself with great bitterness against the defendant, saying that "he had camped upon his father's trail and now he proposed to camp upon this defendant's trail and put him where he belonged." That after the trial of affiant's motion for bail, the judge, while Commonwealth's attorney, said that he would never allow any man bail who had killed his father. All of the facts stated in the affidavit, including the statements attributed to the judge, occurred while the latter was Commonwealth's attorney, and not after he became judge. But this court deemed the affidavit insufficient and in so determining, said:

"The statement attributed to the circuit judge, was made when he was Commonwealth's attorney in the district, and when he was not circuit judge, and had no reason to anticipate that he would be. He was speaking as Commonwealth's attorney. When he declared that 'he had camped upon his father's trail and now proposed to camp upon the defendant's trail and put him where he belonged,' he was simply expressing what he would do as Commonwealth's attorney. The law made it his duty, as Commonwealth's attorney, to prosecute all infractions of the law occurring in his district. It made it his duty to camp upon the trail of all those who were charged with committing felonies, and to put them where they belonged. The words do not necessarily import any personal hostility to the defendant. On the other hand, taking this whole paragraph together, it would simply indicate that the officer had in mind the performance of the duties which the law imposed upon him.

"The office of circuit judge is one of great dignity and responsibility. Perhaps the peace and good order of the district more largely depends upon him than any other one person. The people of the district should not be deprived of the services of the regular judge for trivial causes, or on account of declarations made by him which do not necessarily show such a state of mind as would make him unfit to hold the court for the occasion."

It is not necessary to unduly lengthen this opinion by further excerpts from the opinions of the court. What we have already made are sufficient to show that it is necessary for the affidavit to state facts from which

it may be readily determined that the judge sought to be removed is so poisoned and prejudiced against the litigant as to make it reasonably apparent that he can not with his human nature give the affiant a fair and impartial trial. Mere statements amounting to no more than the conclusions of the affiant that the judge is a man of firm, yet honest convictions along certain lines as to his duty, as well as that of others, or even that he entertains certain notions of law applicable to the case, are neither sufficient to authorize the regularly elected judge to vacate his seat at the behest of a litigant who perchance might be dissatisfied with some of the judge's former rulings.

We find nothing in the cases of Powers v. Commonwealth, 114 Ky. 237; Givens v. Crawshaw, *supra,* and Kentucky Publishing Co. v. Gaines, *supra,* relied upon by appellant, militating in the least against what has been said, since a reading of the opinions in those cases will show that the affidavit filed to obtain a removal of the judge contained facts from which it was made manifestly patent that the judge was disqualified to preside in the case. In some of them the judge was shown to be personally hostile to the affiant, which hostility was made clear not from a mere statement of the affiant, but from the facts which were incorporated into the affidavit; while in others the affidavit disclosed that the judge on previous occasions had expressed positive convictions concerning the truthfulness of vital and contested facts in the particular case. In other words, that he had stated that he personally knew of the truth or falsity of the determining facts in that case.

Guided then by the rule governing the subject as laid down by this court, let us briefly examine the affidavit in this case and see if it measures up to the requirements.

Condensely stated, the facts incorporated into the affidavit which it is claimed disqualify the judge from presiding at the trial are: (a) That the judge interested himself in the "institution and procuring of the rules" against appellant. (b) That instead of issuing one rule only, he issued four. (c) That he made them returnable three days after they were issued. (d) That he, on the first trial, entered a judgment of disbarment instead of one of less severity. (e) That the judge had instituted similar proceedings against other attorneys prior to the issual of the rule against appellant upon informa-

tion given him that they had been guilty of conduct authorizing proceedings for their suspension or disbarment. (f) That the judge declined to sustain a motion to set aside the first judgment of disbarment in this case and to substitute therefor one for limited suspension. (g) That in the campaign preceding the election in 1915, the one at which the judge was a candidate for re-election, his supporters urged in his behalf his efforts to improve the personnel of the bar by the institution of this and other similar proceedings; and, (h) that this proceeding, because of the conditions stated in fact (g) became generally known and discussed as one of Judge Fields v. Chreste.

To our minds it requires no analytical or laborious discussion to show that neither of the alleged statements constituted facts from which it may be established that the judge entertained such ill-will or prejudice against the defendant as to disqualify him under the rule of practice, *supra,* from presiding in the case. Fact (a) contains a statement of nothing more than what the law authorizes and imposes upon a judge as a duty in purifying the standard of the bar, which assists him in the administration of justice. In the case of Lenihan v. Commonwealth, 165 Ky. 93, which was a proceeding in all respects similar to this one, it is said: "This action may be taken by the court on its own motion." In Rice v. Commonwealth, 18 B. M. 472, the same objection was raised, and in answering it this court said: "This objection is founded on a misconception as well of the power as of the duty of the court. The defendant in the rule was an attorney at law, and an officer of the court. All courts have the power to control and regulate, to a certain extent, the conduct of their officers, and to inflict on them for their official misconduct such punishment as the law prescribes. If the court have knowledge of the existence of such official misconduct on the part of any of its officers, it not only has the power, but it is its duty to institute an appropriate proceeding against the offender and to bring him, if guilty, to condign punishment. And it is much to be regretted that this duty which the law devolves upon the courts of the country is so little regarded and that the obligations which it imposes are so frequently overlooked or neglected."

Other cases from this court are Walker v. Commonwealth, 8 Bush 86; Commonwealth v. Rowe, 129 Ky. 650, as is also the case of Ex Parte Wall, 107 U. S. 265.

Indeed, there is no authority denying the power of the court to institute and prosecute the proceedings upon his own initiative.

Fact (b), as we view it, it so insufficient for the purposes intended as to be perfectly manifest. If bias or prejudice sufficient to show legal disqualification in a judge to preside at the trial of a cause is to be inferred from the fact of his having instituted four proceedings instead of one, each of which are based on a separate and distinct state of facts, then well might it be insisted that a grand jury should not return but one indictment against a defendant, although it had proof before it of other offenses committed by him. It was the duty of the judge having the authority to institute such a proceeding to prefer as many of them against the defendant as the facts before him warranted, and he cannot be charged with disqualifying prejudice because of his having done so.

Neither is there any merit in fact (c) because the record shows that no complaint was made by the defendant of the fact of the rules having been made returnable three days after they were issued, nor did he ask for further time in which to prepare his response, but on the contrary, after filing it, said that he was willing for the case to be submitted, and this in answer to an inquiry made of him by the judge. Facts (d) and (f) relate to former rulings of the judge in this case, and (e) to similar proceedings instituted by the judge against other attorneys. The insistence that these facts are sufficient to manifest legal disqualification of the judge to preside at the trial is shown to be without merit by this court's opinion in the case of German Insurance Co. v. Landrum, *supra,* wherein it is said: "Again, even in ordinary cases where the judge rules the one way or the other, those perfectly honest, in the excitement of the moment and feeling the sting that perhaps results from an erroneous ruling, will seize on this action of the court as a justification (to use the language so often heard and read in the records before us) for swearing the judge off the bench. It can not be urged that the rule of the common law has been so far enlarged as to permit the exercise of the privilege conferred by the statute for any of the reasons given."

We are also unable by any process of reasoning to see where facts (g) and (h) lead to the conclusion that the judge because of prejudice or other grounds was

disqualified to preside in the case. It is not shown that he was responsible for the conditions in either of such statements, except perhaps indirectly through an upright and conscientious administration of the duties of his office which commended itself to the voters. If the action of Judge Field in the institution and prosecution of this and other similar proceedings tended to ingratiate him with the people, it certainly can not be said to at the same time disqualify him from fulfilling the high functions of his office. Without further discussion, we unhesitatingly conclude that the affidavit stated no fact tending to show such disqualifications of the judge as would prevent him from giving the defendant a fair and impartial trial, and the motion seeking to remove him was therefore properly overruled.

Briefly discussing the (2) error relied upon, being that of permanent disbarment, we find that the common law upon the subject still prevails in this jurisdiction. The only statute which we have upon the subject is section 97 of the Kentucky Statutes, which prevents any person convicted of treason or felony from practicing law in any of the courts of this Commonwealth. But, as said in Commonwealth v. Rowe, *supra*, and quoted with approval in Lenihan v. Commonwealth, *supra*: "But this (the statute) does not mean that only those who have been convicted of a felony or treason may be disbarred." And in Baker v. Commonwealth, 10 Bush 592, this court said: "It would be unjust to the profession, the purity and integrity of which it is the duty of the courts to preserve, and a disregard of the public welfare to permit an attorney who has forfeited his right to public confidence to continue the practice of his profession."

In the Lenihan case, and in the former opinion in this case, as well as other cases from this court to which we have referred, it is recognized by this court that a pronouncement by the court against the defendant is not in its nature a punishment of him, but it is inflicted with a view of purifying and maintaining the high standard for integrity so essential to the office of attorney at law. In Amer. & Eng. Ency. of Law, 2d edition 302, the general rule as to the sufficiency of the grounds for permanent disbarment are thus stated: "In order for any acts or conduct to be a ground for striking the name of an attorney from the roll it is not essential that they be such as would subject him to indictment or to any civil

liability; any conduct on the part of an attorney evidencing his unfitness for the confidence and trust which attend the relation of attorney and client and the practice of law before the courts, or showing such a lack of personal honesty or of good moral character as to render him unworthy of public confidence constitutes a ground for his disbarment.''

Other authorities are Vol. 2, R. C. L. 1089; 6 Corpus Juris. 612-13; *In re* Philbrook, 45 Amer. St. Rep. 59, and notes, and also the cases, *supra,* from this court. The authorities are furthermore to the effect that any facts which would preclude the defendant from admission to the bar will justify his disbarment after he shall have been admitted. Amer. & Eng. Ency. of Law, 2 Ed. 303, and notes; also 2 R. C. L. 1089, and other authorities, *supra.*

In this case the defendant stands convicted of soliciting clients through the efforts of agents, at least one of whom is shown to be of exceedingly bad character, which fact the defendant knew at the time he employed him as agent. He is furthermore convicted of authorizing that agent to procure clients by fraudulent means through the misrepresentation of facts by inducing the prospective and confiding client to believe that he was employing wholly different counsel who were attorneys of known ability and high standing. In addition, the verdict convicts him, and which he admits, of having withheld evidence which he knew was beneficial to a litigant until he was given employment in the case. This court in its former opinion, commenting on this particular conduct of the defendant, said: ''A resort to methods like this to secure employment exhibits such low ideals of the standing of honor prevailing in the profession that it may as we think be made a basis of the rule to show cause why the attorney guilty of it should not be punished for unprofessional conduct.''

It is also said in that opinion: ''We, therefore, think that Chreste should have a new trial, and the opportunity to introduce evidence, if any he has, in extenuation of his offense, and also evidence as to his previous reputation, if he wishes to do so, in order that in the light of this evidence the judge may be better prepared to enter a judgment corresponding to the nature and gravity of the charge, and such a judgment as will be sufficient as punishment and example, and yet not too severe for a first offender.''

From the record as it then appeared defendant was guilty of only one act of employing an agent to solicit clients, and it did not appear for how long that agent worked for the defendant, or how many clients he procured. The record as now presented shows that defendant employed successive agents, and that they worked for him for a period longer than a year, and procured for him more than one hundred clients. Instead of defendant introducing evidence "in extenuation of his offense," and "as to his previous reputation," he failed to do either. His case, as shown by the present record, is much less favorable to him than it was on the first appeal; neither do we find in it the condoning features of the Lenihan case. Defendant does not stand convicted of his first offense, as was true in the Lenihan case, and to which, upon the record as then presented, reference was made in the former opinion of this case. On the contrary, he is convicted of having adopted and pursued a studied and settled course of forbidden practice for a period of more than a year preceding the issuing of the rules against him, and that, too, when he was at an age no longer entitling him to be classed as a youth, and a graduate of one of the leading institutions of learning in this country.

The violations of which the defendant stands convicted do not have for their amelioration the fact of their being single acts committed perhaps in an unguarded moment by a more youthful and less experienced attorney, and constituting his first offense, in which case a suspension from the practice for a reasonable time might be sufficient. His guilt is broader and deeper than this and shows to our minds a contempt for the ethics of the profession and a persistent disregard of the standards of honor and integrity which should be possessed by members of the bar. Without further comment, we feel safe in saying that we do not believe the sentence pronounced was unauthorized.

The (3) ground urged for a reversal may be quickly disposed of. The Commonwealth, when the case was called for trial, asked for a continuance on account of the absence of the witness, Saunders, and in support of the motion the affidavit of the county attorney was filed, setting forth the testimony which the absent witness would give if present. In order to avoid a continuance the defendant agreed that the affidavit might be read as the testimony of the absent witness, which was done.

Complaint is made of the sufficiency of the affidavit, but without lengthening this opinion by incorporating it, we think it was sufficient, but if not, defendant is in no attitude to complain, since he agreed that it might be read upon the trial. In the recent case of Stearns Coal & Lumber Co. v. Williams, 177 Ky. 698, in dealing with a similar question, we said: "However this may be, the court had overruled the motion to continue the case, not because the affidavit therefor was insufficient, but because the court gave defendant the benefit of it by ordering that it might be read as the deposition of the absent witness. It did not then lie in the mouth of plaintiff to raise the question of the sufficiency of the affidavit when it was offered in evidence, as that question was settled, and we think rightfully. The only objection which plaintiff could then make would be one to the competency and relevancy of the testimony of the absent witness as incorporated in the affidavit."

The facts in the instant case are stronger against defendant's contention than they were in the case just referred to because here the defendant was not compelled to go into the trial, except upon his voluntary agreement that the affidavit might be read as the testimony of the absent witness.

Considering the (4) grounds urged by defendant for a reversal, the court in submitting to the jury the questions for their determination under the third rule issued against the defendant assumed that the defendant had employed as his agent the man Saunders, as was stated in the rule, and submitted to the jury only the question as to whether the defendant instructed Saunders to represent to those of the Catholic faith that Saunders represented O'Doherty & Yonts, and to others that he was representing Edwards, Ogden & Peak. The defendant in his response, as well as in his testimony, only denied the latter facts stated in the rule, admitting the employment of Saunders. In assuming in the instruction the truth of the facts which defendant admitted, it is difficult for us to see how this constituted error on the part of the court. The very purpose of a jury, and its sole function, is to decide and determine issues which are disputed. When there is no dispute, there is nothing for the jury to try, and it can not prejudice a litigant's case for the court to assume in its instructions a fact which the litigant under oath admits

to be true. We, therefore, find no merit in this contention.

Upon the whole case we fail to find any error authorizing us to disturb the judgment, and it is, therefore, affirmed.